Otis **CHANDLER**, Petitioner–Appellant,

v.

Thomas **RICHARDS**[1] and Indiana Attorney General, Respondents–Appellees.

No. 90–2826.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1991.

Decided July 1, 1991.

worth.

Ronald D. Haze, Chicago, Ill., for petitioner-appellant.

Thomas D. Quigley, Office of Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before CUMMINGS, RIPPLE, and MANION, Circuit Judges.

PER CURIAM.

While serving a 50-year murder sentence in Indiana, Otis Chandler escaped from jail. During the time he was not incarcerated a robbery occurred at an outdoor night depository of a South Bend, Indiana bank. Mr. Chandler was charged with that robbery and after a jury trial was found guilty. He was sentenced to 30 years imprisonment. In a direct appeal to the Indiana Supreme Court, Mr. Chandler contended that the prosecution's evidence against him was insufficient to sustain the jury's finding of guilt. The court rejected his argument and upheld his conviction. He then filed a 28 U.S.C. § 2254 petition in federal district court seeking a writ of habeas corpus based on his allegation that the jury was presented with insufficient evidence to support a finding of guilt. The district court also rejected his argument, concluding that a rational trier of fact could indeed have found him guilty based on the evidence presented to the jury, as summarized by the state supreme court.[2] Mr. Chandler appeals the district court's conclusion.

## I. Facts

On the night of July 31, 1981 a robbery occurred at an outside night depository station of a bank in South Bend, Indiana. The victim, Timothy Coleman, a co-manager of a local Kroger grocery store, was depositing the day's receipts at the bank. As he was making his deposit, a man ran up from behind, yelled "drop the bag," and shot Mr. Coleman in the chest. The attacker then fled across the bank parking lot.

Mr. Coleman testified that he saw his attacker for 5 to 10 seconds, and that the attacker was 5–7 feet away from him at the time of the robbery. Mr. Coleman stated that the robber was wearing a grey sweatsuit and did not have any hat or covering over his face. Further, Mr. Coleman testified that the night depository area was covered by a canopy that held lights and that the area was better lit than the surrounding parking lot.

At the hospital, Mr. Coleman described his attacker as a black male, approximately 5'8", with short hair and prominent features. Several days later, the police brought Mr. Coleman eight mug-shots, including one of Mr. Chandler, and asked if any of the pictures depicted his attacker. Mr. Coleman identified the picture of Mr. Chandler as being that of his attacker. Mr. Coleman also identified Mr. Chandler in the courtroom as his assailant. Another witness at the trial, Jerome Kreczmer, an off-duty police officer and security guard at Kroger, had driven Mr. Coleman to the bank and was inside his car, immediately next to Mr. Coleman, at the time of the shooting. He got out of his car and fired two shots toward the attacker. He testi-

---

2. Although the district court quoted the state supreme court's findings of fact in its order denying the writ, it also stated that, "The full state court record has been filed and examined." Therefore, it is unclear whether the district court rested its decision exclusively upon the state supreme court's findings of fact or conducted an independent examination of the state trial court transcript.

fied that the attacker was a young black male, about 5'9", wearing shorts and a t-shirt, and that he did not see any hat or other face covering on the attacker. He acknowledged that the police report of his initial description included a notation that he stated that the attacker could have been wearing a baseball cap.

A third witness testified that he heard two shots and then saw a young black man, wearing shorts and a t-shirt, running out of a nearby alley. A woman's stocking, cut off and tied at one end, was found in the parking lot along the route of the attacker's escape, as was a baseball cap. In addition, a pair of glasses, with two fingerprints, was found near the edge of the parking lot. However, neither of the fingerprints on the glasses matched those of Mr. Chandler.

Mr. Chandler introduced evidence that he had been alone at his cousin's home at the time of the crime.

## II. Analysis

■ Mr. Chandler presents a two-part argument to advance his contention that there was insufficient evidence to support his conviction. First, Mr. Chandler argues that the district court erred in applying a statutory presumption of correctness, *see* 28 U.S.C. § 2254(d)[3], to the state supreme court's findings of fact. Mr. Chandler contends that state findings of fact should not be afforded a § 2254(d) presumption by federal courts ruling on habeas petitions based on insufficient evidence. He asserts to do so would eviscerate the review mandated by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to ensure the constitutional guarantee that a defendant be convicted only by evidence proving guilt beyond a reasonable doubt. Furthermore, Mr. Chandler contends that

applying the standard of *Jackson v. Virginia* no rational trier of fact could have found Mr. Chandler guilty based on the evidence presented at trial.

Throughout *Jackson* the Supreme Court stressed the importance of the state factfinder's role: "... whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789. *Jackson* highlighted the deference that must be given to the state factfinder's determinations. The opinion does not mention or address the statutory deference of § 2254(d). This omission however does not mean that § 2254(d) is inapplicable to *Jackson* reviews.[4] Instead, the deference previously codified in § 2254(d) comports with the *Jackson* standard for a federal court's review of a habeas petition challenging the sufficiency of the evidence in a state conviction.

We have commented upon the apparently expanded scope of review available under *Jackson, see, Nichols v. Gagnon*, 710 F.2d 1267, 1271 (7th Cir.1983). Nevertheless, as a general matter, *Jackson* follows the basic legal standard that in order to preserve the state factfinder's role a federal court must review the evidence in light most favorable to the prosecution. Section 2254(d), on the other hand, provides guidance as to the extent a federal court should probe a state court's factfinding when ruling on habeas petitions. As such, we have consistently conducted *Jackson* reviews under the guidelines of § 2254(d). *See, e.g., Davis v. Franzen*, 671 F.2d 1056, 1057 (7th Cir. 1982); *United States ex rel. Jones v. Franzen*, 676 F.2d 261, 265 (7th Cir.1982); *Williams v. Duckworth*, 738 F.2d 828, 829 n. 2 (7th Cir.1984); *Montgomery v. Petersen*, 846 F.2d 407, 408 n. 1 (7th Cir.1988). Indeed, we have applied the statutory pre-

---

**3.** § 2254(d) provides in part:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus ... a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... evidenced by a written finding, a written opinion, or other reliable and adequate written indicia, shall be presumed to be correct....

**4.** While several commentators have suggested a tension exists between the standards set out by *Jackson* and § 2254(d), *see, e.g., The Attorney's Guide to the Seventh Circuit Court of Appeals,* § 7.5c(4), p. 7–34–35 and Yackle, *Postconviction Remedies,* § 134, p. 335 n. 79.76 (1990 Supp.), the Supreme Court has not commented on any such tension.

sumption of § 2254(d) to such a review without discussion. *See, e.g., United States ex rel. Smith v. Fairman,* 769 F.2d 386, 393–94 (7th Cir.1985). We conclude that Mr. Chandler's case falls squarely within the parameters of § 2254(d), as did the cases cited above. Contrary to Mr. Chandler's concern, our reviews under § 2254(d) and *Jackson* are compatible.

■ Moreover, a more probing review of the trial court record would not warrant reversal of the district court's decision. Although the evidence against Mr. Chandler was contradictory, reviewing it in the light most favorable to the prosecution, as is necessary under *Jackson,* it is clear that a rational trier of fact could have convicted him based on the evidence in the record. The victim definitively identified Mr. Chandler in a photo array during the investigation and in court during the trial. While there was some conflicting evidence about what the attacker may have been wearing, the jury—not this court—determines the credibility of the testimony of the witnesses, including the victim. *United States ex rel. Wandick v. Chrans,* 869 F.2d 1084, 1089 (7th Cir.1989). Further, although no information explicitly linked Mr. Chandler to a hat, glasses, and a stocking found near the robbery scene, evidence possibly indicating someone else committed the crime and discarded those items, this by no means conclusively removes him from the scene. One or more of the items could have been discarded some other time. This mere speculation is more than offset by the eyewitness identification which makes the finding of guilt entirely rational.

### III. Conclusion

A review based on either the Indiana Supreme Court's factual summary or on the trial record itself supports a conclusion that the evidence, when considered in a light most favorable to the prosecution, was sufficient to convict Mr. Chandler of robbery.

AFFIRMED.